## Case No. 17,301.

### The WAVERLY.

[7 Biss. 465;[1] 9 Chi. Leg. News, 372.]

District Court, E. D. Wisconsin. June, 1877.

LIBEL FOR SEAMEN'S WAGES—PRELIMINARY PROCEEDINGS—CUMULATIVE REMEDY.

1. The remedy given to seamen by sections 4546 and 4547, Rev. St. U. S., as preliminary to the filing of a libel for wages, is not exclusive, but cumulative merely.

[Cited in Murray v. Ferry-Boat, 2 Fed. 88; The Edwin Post, 6 Fed. 208; The Frank C. Barker, 19 Fed. 334.]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. A libel for seaman's wages may be filed, and process for the arrest of a vessel obtained without resort to the preliminary proceedings authorized by said sections.

3. Those sections examined and construed in connection with section 6 of the act of 1790.

4. The common law rule that a statutory remedy which does not negative the remedy at common law is cumulative is applicable to remedies under the maritime law.

In admiralty.

This was a libel for seaman's wages. The libel alleged that about the 5th day of October, 1876, the steamer Waverly was lying at the port of Cleveland, bound on a voyage to Chicago, and thence back to Buffalo; that the master hired libellant to serve on board the steamer as a seaman, at stipulated monthly wages; that libellant signed shipping articles, and in pursuance thereof went on board and entered into the service of the steamer. That about the 7th of October, and while the steamer was at sea, the libellant was, by sickness, rendered unable to perform the duties of a seaman; and on the arrival of the steamer at Milwaukee, to which port some part of her cargo was consigned, being unable to obtain medical treatment on board, he was obliged to leave the vessel; that he demanded his wages from the time of shipping on board up to the time of his arrival in Milwaukee, which the master refused to pay. The libel further alleged that a certain amount was unpaid and due to the libellant, and that the steamer, at the time the libel was filed, had left the port of Milwaukee. To this libel the respondent filed a plea, in which, among other things, it was alleged, that prior to the filing of the libel and the issuing of the monition, the master of the steamer was not summoned by the district judge, or by a justice of the peace, or commissioner of the circuit court, to appear before him and show cause why process should not issue against the steamer.

Babcock & Stone, for libellant.
Cottrill & Cary, for respondents.

DYER, District Judge. The point made in this case is, that inasmuch as the preliminary proceedings authorized by sections 4546 and 4547 of the Revised Statutes, were not taken previous to the filing of the libel, the court has not jurisdiction to proceed with the cause; and the question submitted for decision is, whether in a case touching seamen's wages, it is necessary that this preliminary proceeding, should be taken, before a libel can be filed and monition issued.

The present statute, in relation to these preliminary proceedings, is substantially like the act of 1790.

There are some changes in phraseology, but in substance the provisions of the two statutes are the same.

Section 6 of the act of 1790 (1 Stat. 131, c. 29) provides first: "That every seaman

or mariner shall be entitled to demand and receive from the master or commander of the vessel to which he belongs one-third part of the wages which shall be due to him at every port where such ship or vessel shall unlade and deliver her cargo, before the voyage be ended, unless the contrary be expressly stipulated in the contract; and, as soon as the voyage is ended, and the cargo or ballast be fully discharged at the last port of delivery, every seaman or mariner shall be entitled to the wages which shall be then due according to his contract."

The same clause in substance may be found in section 4530 of the Revised Statutes, the language of that section being: "Every seaman shall be entitled to receive from the master of the vessel to which he belongs, one-third part of the wages which shall be due to him at every port where such vessel shall unlade and deliver her cargo before the voyage is ended, unless the contrary be expressly stipulated in the contract; and as soon as the voyage is ended, and the cargo or ballast is fully discharged at the last port of delivery, he shall be entitled to the wages which shall be then due."

The only material difference between that section and the first clause of the 6th section of the original act is, that the words "according to the contract" after the word "due," at the end of the first clause in section 6, are omitted from section 4530, an omission, however, which is quite inconsequential, because it is evident from an examination of the entire statute that it is treating exclusively of cases where seamen have entered into employment under written contract, and that the case of one who engages in service as a seaman, under agreement not in writing, is not embraced within the provisions of this statute.

Now, following still further the language of section 6 of the act of 1790, we find it there provided, that "if such wages shall not be paid within ten days after such discharge, or, if any dispute shall arise between the master and the seamen or mariners, touching the said wages, it shall be lawful for the judge of the district where the said ship or vessel shall be, or in case his residence be more than three miles from the place, or of his absence from the place of his residence, then for any judge or justice of the peace to summon the master of such ship or vessel to appear before him to show cause why process should not issue against such ship or vessel, her tackle, furniture and apparel, according to the course of admiralty courts, to answer for the said wages."

This section then further provides that, "if the master shall neglect to appear, or appearing, shall not show that the wages are paid, or otherwise satisfied or forfeited; and if the matter in dispute shall not forthwith be settled, in such case, the judge or justice shall certify to the clerk of the court

of the district, that there is sufficient cause of complaint whereon to found admiralty process, and thereupon process may issue."

At the end of the section is also this provision: "but nothing herein contained shall prevent any seaman or mariner from having, or maintaining any action at common law for the recovery of his wages, or from immediate process out of any court having admiralty jurisdiction. wherever any ship or vessel may be found, in case she shall have left the port of delivery where her voyage ended, before payment of the wages, or in case she shall be about to proceed to sea before the end of the ten days next after the delivery of her cargo or ballast."

These provisions of section 6 are incorporated substantially into sections 4546 and 4547 of the present Revised Statutes.

The differences in language are these: Section 4546 begins, "whenever the wages of any seaman are not paid," etc. The language of section 6 in the act of 1790 is, "and if such wages shall not be paid within ten days after such discharge," etc.

This variance is clearly one of phraseology only. The word "such" is used in the 6th section of the original act in that connection, because immediately preceding it, and as part of that section, is the provision which declares when and at what ports a seaman shall be entitled to demand his wages or some share thereof, while in section 4546 of the Revised Statutes. it was necessary that the word "such" should be changed to "the," because the provision in relation to the payment of the wages was in a preceding independent section, (4530).

There are some further differences in the language of these statutes. and I refer to them particularly since upon the argument it was claimed that because of these variances the provisions of the Revised Statutes on the subject should receive a different construction from that heretofore placed upon the act of 1790.

In section 6 of the original act it is provided that "if any dispute shall arise between the master and the seamen or mariners touching the said wages, it shall be lawful." etc.

The language of section 4546, Rev. St., is. if "any dispute arises between the master and the seamen touching wages, the district judge," etc.; the words, "the said" in section 6, of the act of 1790, being omitted from section 4546, of the Revised Statutes, and in this respect it is urged that the present statute is more comprehensive than the original act, and hence should receive a broader construction.

But to what wages does this provision of section 6 refer? Clearly, to wages that have been spoken of in the previous provision of the section, namely. the wages which the seaman is entitled to demand at different ports, and upon the happening of certain events.

Then, to what wages does section 4546 of the Revised Statutes refer? The words "the said" being there omitted it is nevertheless clear that the section refers to such wages as

have been previously spoken of in this chapter (chapter 3, tit. 53, Rev. St.), because it is concerning no other wages that any legislation is attempted. They are wages due to a seaman upon the contract which he has made, and which it is declared by section 4530,—which corresponds, as we have seen, with the first clause of section 6, in the act of 1790—shall be due in certain installments, and at certain times. It is plain, therefore, that in this respect there is no substantial difference between these statutes.

It is to be observed, also, that the language at the end of section 4547, is in substance identical with that at the end of section 6 of the act of 1790.

Again it is insisted that the provisions of the present statute are of broader import than these of section 6, of the act of 1790, because in the latter section the language is that "it shall be lawful for the judge of the district," etc., "to summon the master," etc., while in section 4546 of the Revised Statutes, it is provided that the district judge may summon the master, etc.; and it is contended that the word "may," as thus used, means "must," thus making the language of the section imperative, while that of section 6 of the act of 1790 is confessedly permissive merely. I do not think the statute should be so construed. The language of both statutes in the particular referred to is, under a fair and reasonable construction, equivalent. The change is merely one of words and not of meaning.

I conclude, therefore, upon a comparison of these two statutes, that the only differences in their respective provisions, are purely differences in phraseology; and it has seemed important to determine whether this is so or not, because if they are substantially the same, then the construction which may have been given to the act of 1790, with reference to the question here involved, would be applicable in construing the present existing provisions as contained in the Revised Statutes.

Now as an original question it may be said that there is strong ground for contending that this statute was intended as a limitation upon the right of a seaman to have immediate process from a court of admiralty against a vessel.

Forcible argument may be made in favor of the proposition that it was the intention of congress, in passing that act, to put seamen upon a different footing from that occupied by other parties, who might at once appeal to the maritime law, and obtain immediate process for the arrest of vessels; and there are not wanting cogent reasons which support such an argument.

There are, however, decisions upon the question so direct, and which emanate from sources so eminent that they can hardly be disregarded. One of those decisions is found in the case of The M. W. Wright [Case No. 9,983], and the other in the case of The Wm. Jarvis [Id. 17,-697].

It may be considered also in this connection, that it has been long the practice of this court, and the practice of the district courts in other districts, to treat these provisions of the statute to which I have referred, as furnishing rather an optional and cumulative remedy, than one which excludes a seaman from the right, or privilege, in the first instance, to resort to process in admiralty.

In the case of The M. W. Wright, supra, Judge Longyear had occasion to construe section 6 of the act of 1790, and he applied to it the familiar rule of construction, that "where a right or remedy exists at common law, and a statute is passed giving a new remedy without any negative, express or implied, upon the old common law, the party has his election either to sue at common law, or to proceed upon the statute."

This rule, of course is as applicable to remedies under the maritime law, as it is to those under the common law; and upon a consideration of the question it is held in the case cited, that the proceedings authorized by section 6 of the act of 1790, are merely cumulative.

There is no provision, says the court, expressly negativing the old law which gave to a seaman the right to commence suit in rem in the admiralty court, by libel, and arrest of the vessel in the first instance; and the language used in conferring the right to such new proceeding, is certainly very far from implying such negative.

The opinion concludes: "I hold, therefore, that the preliminary proceedings by summons, &c., prescribed by section 6, of the act of 1790, are cumulative, and in addition to the ordinary proceeding by libel according to the admiralty practice, and may be resorted to or not, at the option of the libellant."

In the case of The Wm. Jarvis, supra, Judge Sprague discusses the question at length, and holds that the act is permissive, not imperative; that it gives only a cumulative remedy, and that the judge, or the court, has the power, notwithstanding the statute, to order process against a vessel without previous summons to the master. The question, when simplified, seems to be this—can a seaman, without resorting to this preliminary proceeding, apply to the judge or to the court, and in the first instance, upon such application obtain ordinary admiralty process for the arrest of the vessel, or is the proceeding authorized by the statute exclusive in such a case?

In settling that question I think I must be controlled by the decisions to which reference has been made, and shall therefore hold, that the remedy conferred by this statute is not exclusive, but is cumulative, and that the right of a seaman to usual admiralty process is not dependent upon a previous resort to the preliminary proceeding authorized by sections 4546 and 4547.

Plea overruled, with leave to answer.